IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 04-cv-0210-RPM

APPLIED CHEMICALS MAGNESIAS CORPORATION,

    Plaintiff,

vs.

PACIFIC INDEMNITY COMPANY, a Wisconsin insurance company, and
FEDERAL INSURANCE COMPANY, an Indiana corporation,

    Defendants.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

    The plaintiff Applied Chemicals Magnesias Corporation ("ACM") filed this action for breach of insurance contract and bad faith breach based on the defendant insurers' alleged improper denial of coverage and failure to defend and indemnify ACM in an action brought by Premier Chemicals, LLC ("Premier") against ACM and its president Robert McCreless, filed in the United States District Court for the Central District of California. ACM and McCreless retained their own lawyers and settled the California lawsuit.

    This action was originally filed in Larimer County District Court and then removed by the defendants to this court based on diversity jurisdiction. There is a signed Scheduling Order which contains undisputed facts. The defendants have moved for summary judgment of dismissal based on the following arguments: (1) ACM failed to give timely notice of the California lawsuit; and (2) the California lawsuit raises a single claim for patent infringement for which there is no coverage under the applicable policies.

ACM markets and sells magnesium hydroxide for a variety of different industrial applications and end-use markets, including water and sludge treatment and odor-control compounds. It advertises its products on a web site, in trade magazines, and through press releases of recent sales.

When Mr. McCreless learned that the Los Angeles County Sanitation District ("LACSD") had developed a method to spray magnesium hydroxide in a slurry form onto its concrete pipes to control erosion, he contacted the LACSD and obtained contracts to sell it magnesium hydroxide slurry for use in its Crown Spray Process for 1999, 2001, and 2002. LACSD's 2000 contract was awarded to Premier.

ACM was the named insured under General Liability Insurance policies issued by defendants Federal Insurance Company and Pacific Indemnity Company for the following policy periods: February 18, 2001-February 18, 2002, February 18, 2002-February 18, 2003, and February 18, 2003-February 18, 2004. The relevant provisions of the policies are identical.

The Insuring Agreement under Coverage B., Personal and Advertising Injury Liability, states:

> 1. We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** to which this coverage part applies. . . .
>
> . . .
>
> 3. This insurance applies to **advertising injury** only if caused by an offense committed:
>
>    a. In the **coverage territory** during the policy period; and
>
>    b. In the course of advertising your goods, products or services.

(Bold in original; Exs. E, F & G, General Liability Insurance, Page 5 of 17.)

Under Section V, Definitions:

1. **ADVERTISING INJURY** means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or

    d. Infringement of copyright, title or slogan.

(Bold in original; Exs E, F, & G, General Liability Insurance, page 12 of 17.)

Section IV, Conditions, of the policies, states:

2. Duties In The Event Of Occurrence, Claim Or Suit.

    a. . . .

    b. If a claim is made or **suit** is brought against any insured; you must immediately record the specifics of the claim or suit and the date received, and notify us as soon as practicable. You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

(Bold in original; Exs. E, F & G, General Liability Insurance, page 10 of 17.)

On September 24, 2002, Premier filed a complaint against ACM and Mr. McCreless, (collectively hereafter referred to as "ACM") in the United States District Court for the Central District of California, in a civil action entitled *Premier Chemicals LLC, a Delaware limited liability company, Plaintiff v. Applied Chemical Magnesias Corporation, trading as ACM Corp., a Colorado Corporation, and Robert McCreless, Defendants,* Case No. CV-02-07469 SVW (CTX). The Premier complaint alleges the following:

(1) Premier is a producer of magnesium oxide and magnesium hydroxide products for

3

industrial, municipal and agricultural markets.  The products' use includes potable water treatment, wastewater treatment, and acid neutralization.

(2) Premier owns four patents: a) "Corrosion Protection in Concrete Sanitary Sewers"; b) "Method for the Reduction and Control of the Release of Gas and Odors from Sewage and Wastewater"; c) "Corrosion Protection in Concrete Sanitary Sewers"; and d) "Corrosion Protection in Concrete Sanitary Sewers."  All of these patents relate to using (applications for us of/processes for use of/methodologies for use of) magnesium oxide or hydroxide to control odor and to protect concrete surfaces from corrosion in municipal sewage and wastewater.

(3)  ACM was recently awarded a contract to supply the LACSD with magnesium hydroxide to be used for sewer crown spray (to prevent sanitary sewer corrosion).

(4) ACM has sold magnesium chemicals to LACSD and others in the past for sewer and waste water applications.

(5) ACM issued a press release announcing that it was awarded a contract to supply LACSD magnesia chemicals to neutralize corrosive acids that attack the exposed portions of concrete pipes in sewer systems.  (Copy of press release attached to complaint.)  [The press release stated that ACM was recently awarded a contract to supply LACSD with material to prevent corrosion of concrete conduits in the district's sewer system, LACSD was going to spray un-submerged portions of concrete pipes that carry raw sewage to wastewater treatment plants with ACM's products, that ACM's products were also utilized by a number of other wastewater plants/districts, and to visit www.magnesias.com (ACM's web site) for more information.]

>    (6) ACM has not received authorization or license from Premier to provide magnesium
>    oxide or hydroxide for use in wastewater and sewage treatment facilities in the
>    prevention of corrosion of concrete pipes.
>
>    (7) The unauthorized and unlicenced uses of magnesium chemicals by LACSD and
>    others for corrosion control applications cover the methodologies covered by Premier's
>    patents.
>
>    (8) ACM sold, offered to sell, manufactured, and/or caused to be sold, offered for sale,
>    and/or manufactured, magnesia chemicals for applications in sewers to LACSD and
>    others for uses that infringe on the patents and, therefore, contributed to and/or induced
>    the infringement of the patents in violation of 35 U.S.C. §§ 271(b) and (c).
>
>    (9) Premier has suffered monetary damages in the form of royalty stream from licensing
>    fee for use of the technology covered by the patents and loss profits in sales of Premier's
>    Thioguard® magnesia product for use in the process covered by the patents.

(Complaint, Ex. A.)

ACM was served with the Premier complaint in late September/early October 2002. Mr. McCreless understood the claim was for patent infringement. ACM, through its controller Richard Rule, notified Tyler Allen of Brown & Brown Insurance of Colorado of the complaint, that ACM was being sued for patent infringement, and asked whether there was coverage. According to Mr. Rule, Mr. Allen stated he would check and get back to Mr. Rule, and called back a few days later to say there was no coverage for patent infringement claims. ACM states that, at that time, it did not know that Premier's inducement claim was based on ACM's advertising. Brown & Brown was the insurance broker through whom ACM purchased the

subject insurance policies.

ACM retained its own counsel in California to file an answer and counterclaim to the Premier complaint on November 21, 2002. Premier filed its reply to the counterclaim on December 13, 2002.

In response to a motion for summary judgment filed by ACM, the California court ruled that to prove its claim for active inducement of patent infringement, Premier must prove that ACM took actions that induced the infringement. ACM had conceded that its press release was an "advertisement."

ACM contends that based on the California court's order and Premier's response brief, it understood for the first time that the inducement alleged in the complaint "was based solely upon ACM's advertising activities." ACM's counsel researched whether there was coverage and, on advice of counsel, in late April or early May 2003, Mr. McCreless contacted Mr. Allen of Brown & Brown about the order and asked if ACM had coverage for advertising injuries.

Federal received notice of the Premier complaint on May 30, 2003 from Brown & Brown, along with a copy of the California court's Ruling on Motion for Summary Judgment. ACM provided defendants with a copy of the press release referenced in the order, along with other press releases, on June 3, 2003. The press release attached to Premier's complaint was sent by ACM to magazines and newspapers and was published at least by some of them with no cost to ACM.

By letter dated July 7, 2003, ACM, through counsel, requested a determination of coverage from the insurers, claiming that the California case was based on an "advertising injury" that falls with the policy coverage. On July 8, 2003, Phillip Hunter Thompson, counsel

for the insurers, issued a letter denying coverage on the grounds that there was no advertising injury and expressly reserved its rights to cite additional policy provisions. On August 11, 2003, ACM, through counsel, disputed the position taken by Federal. On September 5, 2003, Mr. Thompson reaffirmed denial on behalf of the insurers and again reserved all rights.

To determine whether an insurer has a duty to defend, the "courts must look no further than the four corners of the underlying complaint." *Cyprus Amax Minerals Co. v. Lexington Ins.,* 74 P.3d 294, 299 (Colo. 2003). This duty exists "'unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.'" *Id*. at 299 (quoting *Hecla Mining Co. v. N.H. Ins. Co.,* 811 P.2d 1083, 1090 (Colo. 1991)). The duty to defend "encompasses any potential claims raised by the facts," and is a broader concept than the duty to indemnify. *Id*. at 299. "When all the elements of a claim covered by a policy are alleged, an insurer has a duty to defend its insured, even if a claim is not labeled according to the terms used in an insurance policy." *Thompson v. Maryland Cas. Co.,* 84 P.3d 496, 502 (Colo. 2004). In triggering the duty to defend, "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Cyprus Amax Minerals Co., supra* at 301 (internal quotation marks omitted). Where there is no duty to defend, it follows there can be no duty to indemnify. *Id.* at 300.

Although the defendants argue that the California court's ruling should not be considered because the coverage should be determined only from the complaint, the ruling was based primarily on the complaint which included the press release. It is appropriate, therefore, to accept it as an amplification of the complaint.

The question presented is whether a claim of inducement to infringe a method patent by offering to sell magnesium hydroxide slurry for use in a manner that constitutes infringement is an "advertising injury" under the policies' definition. ACM argues that it is because the method patent is an advertising idea or style of doing business that is being misappropriated. The argument is not persuasive for the reasons stated by the Third Circuit Court of Appeals in *Green Mach. Corp. v. Zurich-American Ins. Group,* 313 F.3d 837 (3rd Cir. 2002). There, the court said:

> Misappropriating advertising ideas is the wrongful taking of an idea about the solicitation of business and customers. In this case, there are no such allegations. . . . The only connection between Chiuminatta's claim and advertising is that Chiuminatta also alleges that, after Green Machine "stole" its patented method of cutting concrete, it advertised that method to others, thereby inducing them to infringe the patent as well. Advertising injury is not, however, the same thing as advertising *per se*.
>
> \* \* \*
>
> Style of doing business has routinely been characterized as referring to a company's "comprehensive manner of operating its business." . . . Green Machine contends that Chiuminatta's patented method for cutting concrete is its "manner of operating its business" and, therefore, its style of doing business. We have already rejected this overly broad view. In *Frog, Switch*, we explained that "style of doing business" is "a plan for interacting with consumers and getting their business." . . . Style of doing business, therefore, refers to a company's *marketing* approach, not its production or product. Chiuminatta's method of cutting concrete is like a "product."

*Id.* at 839-840 (internal citations omitted; italics in original).

ACM also contends that in the California action Premier alleged a potential claim of disparagement of its goods, products or services. Inducement to infringe the method of applying slurry protected by Premier's patents does not disparage that method. It is, rather, a violation of the exclusive rights to use the method as protected by the patents.

Accordingly, the conclusion is that the plaintiff has failed to demonstrate that the insurers

had either a duty to defend or indemnify ACM in the California action, thereby entitling the defendants to summary judgment of dismissal.  There can be no bad faith claim for breach of these insurance contracts.

Whether the defendants' additional defense of ACM's alleged failure to give timely notice is not addressed in light of this court's ruling.

Upon the foregoing, it is

ORDERED, that the defendants' motion for summary judgment is granted and the Clerk will enter a judgment dismissing this civil action with prejudice and awarding the defendants costs.

Dated: September 30, 2005.

BY THE COURT:

s/ Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge